IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PATRICK DENNIS FARRELL,

      Plaintiff,

v.                                                                    Case No. 2:15-CV-09229-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant,

**MEMORANDUM AND ORDER**

Plaintiff Patrick Dennis Farrell ("Plaintiff") seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). In his pleadings, Plaintiff alleges error with regard to the Commissioner's assessment of the opinions of his treating psychiatrist, of his compliance with treatment and/or medications, and of Plaintiff's credibility. Upon review, the court finds that the Commissioner applied the correct legal standards and that his findings were supported by substantial evidence contained in the record. As such, the decision of the Commissioner is affirmed.

## I.      Factual and Procedural Background

Plaintiff was born on January 18, 1956. He initially alleged that due to clinical depression and anxiety going back to at least 1992, and various physical ailments he became disabled on February 20, 2003, later amending the onset date to July 23, 2010. Plaintiff has a

high school education and work experience as a delivery driver, a trash truck driver, a groundskeeper, and a security guard.

On July 23, 2010, Plaintiff protectively filed an application for DIB and SSI benefits. His claims initially were denied on February 4, 2011, and again upon reconsideration on May 26, 2011. On April 27, 2012 Plaintiff appeared and testified at an initial hearing conducted by Administrative Law Judge ("ALJ") Michael A. Lehr in Kansas City, Kansas. Vocational Expert Marianne Lumpe also testified at the initial hearing. The ALJ issued an unfavorable decision on April 27, 2012. On March 20, 2013, the Appeals Council issued a remand order with instructions to give further consideration to Plaintiff's residual functional capacity ("RFC") and additional evidence provided by Plaintiff. ALJ Lehr conducted a second hearing on August 27, 2013 in Kansas City, Kansas. Plaintiff again appeared and testified. Vocational Expert Jenifer Teixeira also testified at the supplemental hearing.

By written decision on December 17, 2013, the ALJ found that Plaintiff suffered from the severe impairments of major depressive disorder, an anxiety disorder, and a history of substance abuse. Dkt. 8-1 at 27. The ALJ also found that Plaintiff suffers from several physical impairments including hypertension; a gunshot wound to his left arm; and back, neck, shoulder, and ankle pain. Dkt. 8-1 at 27–28. The ALJ found these impairments non-severe, but gave him the benefit of the doubt and limited his exertional abilities. Dkt. 8-1 at 28. Despite these findings, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment, that Plaintiff's RFC allowed him to perform limited medium work, and that he was unable to perform past relevant work. Dkt. 8-1 28, 30, 36. The ALJ specifically concluded that

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he is limited to occasional use of his right upper extremity for overhead work; he should avoid concentrated exposure to temperature extremes, vibration, and work hazards; and he is limited to simple unskilled work with no contact with the general public and only occasional contact with co-workers and supervisors.

Dkt. 8-1 at 30. The ALJ further concluded that Plaintiff was not disabled because, considering his age, education, work experience, and RFC, he can perform jobs that exist in significant numbers in the national economy. Dkt. 8-1 at 37. The Appeals Council denied Plaintiff's request for review, and Plaintiff timely filed an appeal with this court pursuant to 42 U.S.C. § 405(g). Dkt. 8-1 at 1.

The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Dkt. 8-1 at 27–38), Plaintiff's brief (Dkt.13, at 2–12), and seriatim in the argument section of the Commissioner's response (Dkt. 16, at 4–16).

## II.   Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405 (g). The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence requires more than a scintilla, but less than a preponderance," and is that which "a reasonable mind might accept as adequate to support a conclusion." *Id.* The court may "neither reweigh the evidence nor substitute [its] judgment for the Commissioner's." *Id.* The possibility that two inconsistent

conclusions may be drawn from the evidence does not preclude a finding that the Commissioner's decision was based on substantial evidence. *Id.*

An individual is under a disability only if he or she can establish the inability to engage in any substantial gainful activity because of a physical or mental impairment that is expected to result in death or will prevent the performance of any substantial gainful activity for a continuous period of at least twelve months. *Lax*, 489 F.3d at 1084. This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley v. Astrue*, 2010 WL 30015, at *2 (D. Kan. July 28, 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a) and 416.920(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 WL 30015, at *2.

The first three steps of the evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084. If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and

mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e) and 416.945.

Upon assessing the claimant's RFC, and considering age, education and work experience, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work and whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work that exists in significant numbers in the national economy. *Id.*

### III.    Analysis

Plaintiff alleges error by the ALJ (1) in failing to give proper weight to the opinions of Plaintiff's treating psychiatrist, Dr. Chester Day, and by giving substantial weight to the opinions of non-examining consultative psychologist, Richard Hutchinson, Ph.D.; (2) in finding that Mr. Farrell has not been compliant with treatment and/or medications; and (3) by not fairly adjudicating Plaintiff's credibility.

### A.    Weighing Opinions

Every medical opinion in the record must be evaluated. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015); *See also* 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c). A treating physician's opinion must be given controlling weight if it "is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). "[I]f the

opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not given controlling weight, the ALJ must use the factors in 20 C.F.R. §§ 404.1527 and 416.927 to weigh each medical opinion and explain the weight assigned. *Vigil*, 805 F.3d at 1201–02. The factors set forth in 20 C.F.R. §§ 404.1527 and 416.927 are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1301. The ALJ is not required to discuss every factor, as long as the decision is "sufficiently specific to make clear to any subsequent reviewers" the weight assigned and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citation omitted).

Plaintiff argues that Dr. Day's opinion should have been granted greater than little weight, perhaps even controlling weight, because Dr. Day was Plaintiff's treating physician. Had Dr. Day's opinion been given controlling weight, Plaintiff would have been found disabled at step three of the evaluation process. Here, the ALJ gave Dr. Day's opinions very little weight because (1) the opinions are inconsistent with the weight of the evidence, (2) the opinions are inconsistent with the claimant's activities of daily living, and (3) Dr. Day's opinions concern an issue reserved to the Commissioner. Dkt. 8-1 at 35. The reasons cited by the ALJ are reasonable references to several of the factors listed in 20 C.F.R. §§ 404.1527 and 416.927, including: whether the opinion source presents supporting evidence; how well the source explains the

opinion; whether the opinion is consistent with the record; and all other relevant factors.  The ALJ therefore applied the correct legal standard when weighing Dr. Day's opinions.

The ALJ's conclusion that Dr. Day's opinions are inconsistent with the weight of the evidence is supported by substantial evidence in the record.  Dr. Day completed a Medical Source Statement – Mental ("MSSM") on May 30, 2013 (Dkt. 8-1 at 735–37) and a "Mental/Intellectual Impairment Report" ("MIIR") on July 31, 2013 (Dkt. 8-1 at 758–60).  The evidence of Plaintiff's mental impairments since the amended onset date consists of Dr. Day's treatment, his testimony, and his functional reports.  There is no indication in the record that Dr. Day performed any psychological evaluations or testing.  The only support Dr. Day provided for his opinions is his statement that he treated Plaintiff for three years and his records of Plaintiff's own subjective complaints (Dkt. 8-1 at 758).  Dr. Day's MIIR opined that Plaintiff had "no" aptitude to perform ten out of 16 mental functions needed for unskilled work, and only a "fair" ability in the remaining six (Dkt. 8-1 at 759); had no ability to interact appropriately with the general public, or maintain socially appropriate behavior (Dkt. 8-1 at 760); that Plaintiff had only fair ability to set realistic goals or make plans independent of others, to adhere to basic standards of neatness and cleanliness, and to use public transportation (Dkt. 8-1 at 760); and that Plaintiff could not meet performance demands in a work setting (Dkt. 8-1 at 35, 758).  Dr. Day's own treatment notes are inconsistent with these findings, reflecting Plaintiff routinely performed different levels of work while seeking full time employment (Dkt. 8-1 at 35, 708, 741, 751, 753), and that they addressed goals at each visit (Dkt. 8-1 at 707–725, 739–753).  Furthermore, Dr. Day's opinions of May 2013 and July 2013 are inconsistent with each other, showing drastic changes in just two months without any explanation for the changes.  In addition, this assessment is inconsistent with Plaintiff's testimony and functional reports which indicate continued work

(Dkt. 8-1 at 83, 121, 127–28, 498); the ability to understand and carry out written or spoken instructions (Dkt. 8-1 at 458, 474, 494); care for himself, (Dkt. 8-1 at 454); do chores (Dkt. 8-1 at 127, 455); look for work (Dkt. 8-1 at 123, 127, 454, 490); use public transportation (Dkt. 8-1 at 88); and go to church, the library, and shopping (Dkt. 8-1 at 456–57, 493).

Similarly, the conclusion that Dr. Day's opinions are inconsistent with the claimant's activities of daily living is supported by substantial evidence in the record. Plaintiff stated that he watched television, provided his own personal care, could prepare meals, use public transportation, and perform household chores (Dkt. 8-1 at 35, 84–85); that he enjoyed reading, playing cards, and visiting friends and family (Dkt. 8-1 at 473). Plaintiff's sister confirmed that Plaintiff also ran errands, went to the library, shopped, and managed his own money. Dkt. 8-1 at 35, 498–505. Plaintiff has not shown any significant limitation in daily activities, which is inconsistent with Dr. Day's opinion that Plaintiff has no ability to interact appropriately with the general public or maintain socially appropriate behavior (Dkt. 8-1 at 760); that he has restrictions of daily living activities of cleaning, maintaining a residence and caring for personal hygiene (Dkt. 8-1 at 758); and that he has fair to no ability to perform several mental functions (Dkt. 8-1 at 759).

Plaintiff argues that daily activities such as taking care of oneself, household tasks, hobbies, therapy, school attendance, club activities or social programs are not substantial gainful activity; that such tasks should be qualified on their independence, appropriateness, effectiveness, and sustainability rather than quantity; and that great care must be exercised in reaching conclusions about Plaintiff's ability or inability to complete tasks under the stresses of employment during a normal workday or workweek based on an ability to complete tasks in other settings that are less demanding. He contends that the ALJ completely disregarded these

factors and focused solely on the number of things Plaintiff can do to some degree and, as such, there is no inconsistency in Plaintiff's daily activities and Dr. Day's opinion.  He also contends that had Dr. Day's opinions been given controlling weight, then a determination of "disabled" was in order at step three of the evaluation process.

Whether or not the daily activities constitute SGA is not at issue in assessing the record as a whole and evaluating Plaintiff's daily activities for consistency with the medical opinions. Daily activities are not relevant to step one of the evaluation process, but they are relevant for evaluation of credibility and weighing of medical opinions. 20 C.F.R. §§ 404.1527, 416.927, 404.1529, and 416.929.  Moreover, a claimant's impairments must preclude not just substantial gainful activity, but *any* gainful activity to be of listing-level severity. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing 20 C.F.R. § 416.925(a)). *See also* 20 C.F.R. § 404.1525(a). That being said, the ALJ listed a number of daily activities Plaintiff can perform without limitation or assistance.  Plaintiff's daily activities, individually and cumulatively, do show independence, appropriateness, effectiveness, and sustainability.  Furthermore, Plaintiff's documented mental impairments, including his ability or inability to handle stressful situations, were explicitly incorporated into the RFC determination that he can perform simple unskilled work *with no contact with the general public and only occasional contact with co-workers and supervisors*. (Dkt. 8-1 at 30) (emphasis added).  This determination was not made based on Plaintiff's daily activities alone, but on the record as a whole.

The conclusion that Dr. Day's opinions concern an issue reserved to the Commissioner is supported by substantial evidence in the record.  Dr. Day's MIIR dated July 2013 opined that Plaintiff "cannot meet performance demands in a work setting." Dkt. 8-1 at 758.  This is essentially a conclusion that Plaintiff is disabled.  Such a determination of disability is reserved

to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1)–(3); 416.927(d)(1)–(3).  Physicians may cite their opinions on Plaintiff's abilities, but the Commissioner is not bound by them. *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).  The commissioner is responsible for determining if a plaintiff's impairments rise to the level of disability and the Tenth Circuit has found this a valid factor for assigning little weight to a medical opinion. *See Franklin v. Astrue*, 450 F. App'x 782, 785 (10th Cir. 2011).

Therefore, considering all relevant factors for weighing medical opinions, it was reasonable for the ALJ to determine that Dr. Day's opinions were poorly supported, were inconsistent, and deserved little weight.  The ALJ's assignment of little weight to Dr. Day's opinions is supported by substantial evidence in the record.

Plaintiff argues that Dr. Hutchinson's opinion should not have been given greater weight than that of Dr. Day.  The ALJ granted Dr. Hutchinson's MSSM substantial weight because (1) Dr. Hutchinson had the benefit of reviewing the majority of the medical record, (2) his opinion is consistent with the record as a whole, and (3) his opinion is based on his area of expertise. Dkt. 8-1 at 34.  The reasons cited by the ALJ are reasonable references to the factors listed in 20 C.F.R. §§ 404.1527 and 416.927, including: the degree to which the physician's opinion is supported by relevant evidence; consistency between the opinion and the record as a whole; whether or not the physician is a specialist in the area upon which an opinion is rendered; and all other relevant factors.  The ALJ therefore applied the correct legal standard when weighing Dr. Hutchinson's MSSM.

The conclusion that Dr. Hutchinson had the benefit of reviewing the majority of the medical record is supported by substantial evidence in the record.  Dr. Hutchinson was provided Plaintiff's medical records for the period of February 2003 through March 2012.  While

Dr. Hutchinson did review records from before the amended onset date, they are nonetheless part of Plaintiff's case record and should be considered. *See Hamlin*, 365 F. 3d at 1215. Plaintiff did not supply the remaining records for the period of March 2012 to July 2013 until after Dr. Hutchinson performed his MSSM on May 15, 2013. However, the records in question after March 2012 do not reflect any significantly different findings and are consistent with Dr. Hutchinson's findings. There is no medical opinion in that time frame reporting any material changes in Plaintiff's impairments. Furthermore, the court notes that an ALJ is only required to obtain an updated medical opinion from a medical expert "when additional medical evidence is received that in the opinion of the administrative law judge … may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." *Best-Willie v. Colvin*, 514 F. App'x 728, 735 (10th Cir. 2013) (quoting *SSR* 96-6p, 1996 WL 374180, at *3–4 (July 2, 1996)).

Substantial evidence in the record supports the conclusion that Dr. Hutchinson's opinion is consistent with the record as a whole. Dr. Hutchinson opined that Plaintiff had moderate limitations in his ability to make judgments on complex work-related decisions, interact appropriately with the public, respond appropriately to usual work situations and to changes in a routine work setting, and understand, remember, and carry out complex instructions. Dkt. 8-1 at 34, 726–27. Dr. Hutchinson also opined that Plaintiff had mild limitations in interacting appropriately with supervisors and co-workers, but no limitations in understanding and remembering simple instructions, carrying out simple instructions, and making judgments on simple work-related decisions. Dkt. 8-1 at 726–27. Dr. Hutchinson concluded that Plaintiff should be limited to simple, repetitive work in a routine environment with low to moderate stress. Dkt. 8-1 at 34, 733. As outlined above, the notes of treating physician Dr. Day account

for activities of Plaintiff that are consistent with Dr. Hutchinson's findings.  Plaintiff routinely performed different levels of work while seeking full time employment. Dkt. 8-1 at 35, 708, 741, 751, 753.  Plaintiff's prior medical records are consistent with this opinion also.  His symptoms of depression and anxiety have been relatively stable since 2003.  He has continued to work sporadically despite his symptoms.  Further, his daily living activities and his functional reports indicate he has been able to provide for his own personal care, prepare meals, use public transportation, shop, attend church, perform household chores, run errands, go to the library and manage his money.  Taken as a whole, the record indicates that Plaintiff does have some impairments, but they do not reach the level of marked limitations.  Substantial evidence supports the conclusion that Dr. Hutchinson's opinion is consistent with the record as a whole.

The conclusion that Dr. Hutchinson's opinion is based on his area of expertise also is supported by substantial evidence in the record.  Dr. Hutchinson is a clinical psychologist who is familiar with the evaluation of mental impairments based on Social Security guidelines in 20 C.F.R. §§ 404.1520(a) and 416.920(a). Dkt. 8-1 at 728–29.

Therefore, considering all relevant factors for weighing medical opinions, the ALJ reasonably determined that Dr. Hutchinson's MSSM was adequately supported and deserved substantial weight.  The ALJ's assignment of substantial weight to Dr. Hutchinson's MSSM is supported by substantial evidence in the record.

Plaintiff also contends that Dr. Hutchinson's opinion was not entirely included in the ALJ's RFC determination because simple unskilled work is not necessarily routine or repetitive, and the ALJ did not address Plaintiff's difficulties in dealing with stress.  However, the ALJ is not required to include limitations that are not supported by the medical record, and "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific

medical opinion on the functional capacity in question." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).  Thus, it is within the ALJ's discretion to assess the RFC based on the record as a whole and the evidence he finds credible.  Moreover, as stated above, the ALJ incorporated Plaintiff's mental impairments into the RFC determination.  The ALJ explicitly stated he "has considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence" (Dkt. 8-1 at 30), and limited Plaintiff not only to simple unskilled work, but also limited his contact with the general public, coworkers, and supervisors (Dkt. 8-1 at 30) based on the record as a whole.

In his Reply Brief, Plaintiff complains that the Commissioner did not mention the opinion of Dr. Schiker in her brief.  But the opinion of Dr. Schiker was discussed and weighed in the ALJ Decision. Dkt. 8-1 at 27.  The ALJ granted Dr. Schiker's opinion partial weight because it was based on a single interaction with Plaintiff and is not entirely consistent with the totality of the evidence.   These are reasonable references to several of the factors listed in 20 C.F.R. §§ 404.1527 and 416.927 including: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; and consistency between the opinion and the record as a whole.  The ALJ applied the correct legal standard when weighing Dr. Schiker's opinion.

Dr. Schiker performed a consultative evaluation and completed a Medical Source Statement – Physical ("MSSP") on October 12, 2013, and saw Plaintiff only once.   The conclusion that Dr. Schiker's opinion is not entirely consistent with the totality of the evidence is supported by substantial evidence.  Dr. Schiker opined that Plaintiff could sit for only four hours

per day and his ability to reach overhead or perform other postural activities was limited to "frequently".[1] Dkt. 8-1 at 763–65. This assessment is inconsistent with Plaintiff's testimony indicating that he has no problem sitting at all (Dkt. 8-1 at 86) and that his right shoulder no longer bothers him (Dkt. 8-1 at 72). Thus, the ALJ properly weighed and considered the opinion of Dr. Schiker.

**B.      Treatment Compliance**

Plaintiff argues that the ALJ erred in finding that Mr. Farrell has not been compliant with treatment and/or medications. Because the ALJ's determination of noncompliance was but one factor in his credibility decision, and not an independent basis for denying Plaintiff's claim, the court will consider noncompliance as part of the ALJ's credibility analysis below.

**C.      Credibility of Plaintiff**

Plaintiff argues that the ALJ erred in assessing his credibility. The specific errors Plaintiff alleges are the ALJ's finding that Mr. Farrell has not been compliant with treatment and/or medications; his assertion that Plaintiff only worked sporadically prior to his alleged onset date, leading to the inference that he seeks disability benefits for financial gain, not due to inability to work; and that his credibility determination is not supported by the record.

When "there is an underlying mental impairment that could reasonably be expected to produce the symptoms described by the claimant, an ALJ is required to evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities." *Martinez v. Astrue*, 422 F. App'x 719, 727 (10th Cir. 2011) (citing 20 C.F.R. § 416.929(c)) *See also* 20 C.F.R. § 404.1529(c). When the objective medical evidence does not substantiate the claimant's subjective statements about these

---

[1] The Medical Source Statement – Physical ("MSSP") categorizes Claimant's ability to perform activities into the categories of "Never"; "Occasionally" (up to 1/3); "Frequently" (1/3 to 2/3); and "Continuously" (over 2/3).

matters, the ALJ must make a finding of credibility of the statements based on a consideration of the entire case record. *Id.* The kinds of evidence and factors the ALJ should consider in assessing credibility include: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the symptoms; (3) the factors that precipitate and aggravate the symptoms; (4) the type, effectiveness, and side effects of medications taken to alleviate the symptoms; (5) the treatment, other than medications, the claimant received for relief of the symptoms; (6) the other measures used to relieve the symptoms; and (7) any other factors. *Id.* (citing 20 C.F.R. § 416.929(c)(3)(i–vii)). *See also* 20 C.F.R. § 404.1529(c) (c)(3)(i–vii).

The ALJ need not make a "formalistic factor-by-factor recitation of the evidence" if he specifies the evidence relied on in the credibility analysis. *Qualls*, 206 F.3d at 1372. "[A] credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight." *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p, 1996 WL 374186, at *4).

Recognizing that "some claimants exaggerate symptoms for purposes of obtaining government benefits," an ALJ's credibility determinations are generally treated as binding on review. *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)), *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotations omitted). The court cannot displace the ALJ's choice between two fairly conflicting views even though the court may have justifiably made a different choice.

*Oldham,* 509 F.3d at 1257–58.  However, notwithstanding the deference generally given to an ALJ's credibility determination, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson*, F.3d at 1144 (quoting *Kepler*, 68 F.3d at 391 (internal quotations omitted)).

Here, the ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms.  However, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms "not credible to the extent they are inconsistent with the above residual functional capacity assessment." Dkt. 8-1 at 31.  The task of the court is not to construct a new credibility assessment, but to determine if that performed by the ALJ was consistent with proper procedure and substantial evidence.  The court finds that Plaintiff has failed to demonstrate any substantial error in the decision of the ALJ.

In a lengthy credibility discussion, the ALJ summarized Plaintiff's subjective allegations and concluded that his allegations of disabling symptoms were not consistent with the record as a whole.  Specifically, the ALJ noted: the claimant's activities of daily living are inconsistent with his allegation of disability; the claimant's treatment has been routine, infrequent, and conservative; he has not been entirely compliant with recommended treatment or medication; the record documents significant improvement in the claimant's condition with treatment and medication compliance; the claimant continued to look for work after the alleged onset date; and there is evidence the claimant stopped working for reasons unrelated to his impairments. Dkt. 8-1 at 35–36.  The reasons cited by the ALJ are reasonable references to several of the factors listed in 20 C.F.R. §§ 404.1529 and 416.929 including: the claimant's daily activities; the type, effectiveness, and side effects of medications taken to alleviate the symptoms; the treatment,

other than medications, the claimant received for relief of the symptoms; the other measures used to relieve the symptoms; and any other factors. The ALJ therefore applied the correct legal standard when evaluating the credibility of Plaintiff.

There is evidence in the record to substantiate each of these factors in the ALJ's determination. According to Plaintiff's functional reports,

> [H]e can provide for his own personal care, prepare meals, use public transportation, shop for groceries, watch television, read, attend church, walk two miles at a time, mow the lawn, wash the dishes, clean around the house, do the laundry, and perform household chores.

Dkt. 8-1 at 35. Both Plaintiff's sister and Plaintiff himself provided a similar report of his daily activities. Dkt. 8-1 at 35, 84–86, 127, 454–57, 493, 498–503. The ALJ indicated that Plaintiff can perform this wide range of daily activities without any significant limitations caused by his disability. Thus, there is substantial evidence for the ALJ's conclusion that Plaintiff's activities of daily living are inconsistent with his allegations of disability.

The ALJ's determination that Plaintiff's treatment has been routine, infrequent, and conservative is supported by substantial evidence in the record. The ALJ properly noted that most of the treatment in the record was in connection with court ordered substance abuse programs. Plaintiff did not otherwise report to treatment until after the filing of his disability claim. Since that time, he saw one psychiatrist, Dr. Chester Day, and treatment was limited to medication and some counseling. At his initial appointment with Dr. Day on September 22, 2010, Plaintiff indicated he had missed an appointment with a clinical psychologist and that he would reschedule (Dkt. 8-1 at 707), but there is no indication in the record that he ever saw any provider other than Dr. Day after August 2010. Though he claims his depression and anxiety were disabling, his appointments were irregular and inconsistent. Dkt. 8-1 at 701–717; 739–753.

This substantial evidence that Plaintiff's treatment has been routine, infrequent, and conservative supports the ALJ's finding concerning Plaintiff's attempts to alleviate his symptoms.

In addition, the ALJ properly cited several instances, both before and after the amended onset date, where Plaintiff reported improvement with medication compliance.  Plaintiff reported a good mood and his medications were working well in May 2007. Dkt. 8-1 at 32, 835.  He reported doing better again in December 2008. Dkt. 8-1 at 32, 820.  He indicated his mood had improved in December 2010. Dkt. 8-1 at 35, 676.  He stated his symptoms had improved in March 2011. Dkt. 8-1 at 32, 713.  He reported he was doing better in May 2011 (Dkt. 8-1 at 35, 714); was doing fairly well in September 2011 and at his next appointment in January 2012 (Dkt. 8-1 at 35, 715–16).  There is evidence that Plaintiff handled his symptoms better at some times than at others (Pl. Br. at 19), but there is also evidence that he was not entirely compliant, which will be discussed below.  This substantial evidence that Plaintiff showed improvement with compliance supports the ALJ's finding concerning effectiveness of treatment.

The ALJ had substantial evidence for his findings that claimant worked for many years with the same impairments and continued to look for work after the alleged onset date.  Plaintiff was diagnosed with generalized anxiety disorder (GAD) and depression as early as 1992 (Dkt. 8-1 at 74, 812), yet he worked as a groundskeeper from 1999 to 2003, and as a security officer in 2005, 2006, 2009, and 2010. Dkt. 8-1 at 414.  He worked part time for Catholic Charities from July to November 2011, when he admits he quit working due to transportation issues. Dkt. 8-1 at 540.  Plaintiff earned $2,721.69 from working in 2010 and $2,589.62 from working in 2011. Dkt. 8-1 at 393.  Plaintiff testified at both of his hearings that he has been looking for work ever since his amended onset date. Dkt. 8-1 at 83, 85, 123.  He said he was looking for any type of work but could not look very far due to transportation issues. *Id.*  Plaintiff's treatment notes with

Dr. Day indicate he was continuously looking for work. Dkt. 8-1 at 708, 741, 751, 753.  Further, the ALJ reasonably noted evidence that Plaintiff stopped working for reasons unrelated to his mental health impairments.   His testimony indicated he quit his job at Wyandotte County because he felt disrespected. Dkt. 8-1 at 68–70, 119–20.   He stopped working at Catholic Charities due to transportation issues. Dkt. 8-1 at 83.   He quit working at Twin City Security because of transportation issues and because he turned himself in to Johnson County for not meeting his probation requirements. Dkt. 8-1 at 88, 397.   He quit working at Outback because he was not getting enough hours. Dkt. 8-1 at 127–28.   There is substantial evidence that Plaintiff was able to work with the same impairments he now claims are disabling, that he continued to look for work after the alleged onset date, and that he stopped working for reasons other than disability.   From these factors, the ALJ inferred that Plaintiff believes himself still capable of working.   This is a permissible inference from factors relevant to the credibility decision.

Plaintiff specifically alleges that the ALJ erred in finding that he has not been compliant with treatment and/or medication.   The Tenth Circuit has held that "before the ALJ may rely on the claimant's failure to pursue treatment or take medication as part of his determination of noncredibility, he should consider '(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse.'" *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (quoting *Frey*, 816 F.2d at 517).   However, where the ALJ is not denying benefits based on failure to follow prescribed treatment, but is evaluating Plaintiff's veracity by considering his attempts to alleviate symptoms, the *Frey* test is not required. *Qualls*, 206 F.3d at 1372.   The ALJ stated,

> The claimant's treatment has been routine, infrequent, and conservative. Furthermore, he has not been entirely compliant with

> recommended treatment or medication … Moreover, the record
> documents significant improvement in the claimant's mood and
> mental health condition with treatment and medication compliance.
> The claimant's conservative treatment, lack of compliance, and the
> improvement in his condition with treatment and medication would
> seem to indicate his impairments are not as significant as alleged.

Dkt. 8-1 at 35. (citations omitted).  Thus it is clear that the ALJ's discussion of noncompliance was not an independent basis for denying Plaintiff's credibility, but was a factor in determining Plaintiff's attempts to alleviate symptoms.

The ALJ noted several instances of missed appointments prior to the amended onset date. Plaintiff argues these instances are irrelevant.  If the ALJ were using the noncompliance as an independent basis for denying the claim, this court would agree.  However, as part of the overall credibility discussion, the noncompliance is relevant, particularly when the subjective complaints have not changed significantly since the amended onset date and when examined in conjunction with several other factors.  Further, the record reflects several instances in his treatment with Dr. Day, after the amended onset date, where Plaintiff was not seen within the time scheduled for follow-up in the treatment plan.  On December 6, 2010, a follow-up was set for December 27, 2010, but Plaintiff's next documented appointment was January 25, 2011. Dkt. 8-1 at 709–10. On May 5, 2011, a follow-up was set for two months, but his next documented appointment was not until September 27, 2011. Dkt. 8-1 at 714–15.  At his September 27, 2011 appointment, follow-up was scheduled for six weeks, but his next documented appointment was not until January 28, 2012 (Dkt. 8-1 at 715–16), and on November 28, 2012, his follow-up was scheduled for two months, but he was not documented as being seen again until March 20, 2013 (Dkt. 8-1 at 745–47).  Thus, there is substantial evidence in the record for the ALJ's conclusion that Plaintiff has not been entirely compliant with recommended treatment, even after the amended onset date.

Plaintiff specifically alleges error in the ALJ's characterization of Plaintiff's prior work history as "sporadic".  The ALJ specifically cited Plaintiff's minimal annual earnings in 1994 ($5,986.00), 1995 ($4,751.00), and 2003 ($3,306.20) (Dkt. 8-1 at 36, 380), and Plaintiff worked sporadically after 2003 by his own admission (Pl. Br. At 21). There is substantial evidence in the record for the ALJ's determination that Plaintiff's prior work history was sporadic.  The ALJ also noted that Plaintiff "continued to look for work after the alleged onset date … he testified that his past employment often ended by him quitting after he felt he was disrespected by co-workers or supervisors and not due to his physical or mental impairments ... and that a lack of transportation was the main reason [he] had not returned to work." Dkt. 8-1 at 36.   The Commissioner contends that these factors, and the fact that Plaintiff worked without interruption through 2003 despite long-standing depression and anxiety, are evidence that Plaintiff is likely seeking financial gain and is not in fact disabled.  This was a permissible inference for the ALJ to draw under the evidence.

Even assuming the ALJ drew an incorrect inference from this record, reversal would not be required. The ALJ cited at least seven reasons for his determination that Plaintiff is not entirely credible.  Plaintiff's prior work history and treatment compliance were only two of several factors the ALJ considered in assessing credibility. *See Wahpekeche v. Colvin*, No. 15-6060, 2016 WL 537248, at *2 (10th Cir. Feb. 11, 2016) (holding one incorrect inference did not warrant reversal when that inference was merely one of several factors the ALJ considered in assessing credibility).

Taken as a whole, the record supports the ALJ's determination that Plaintiff was not entirely credible.  The Court finds that the ALJ employed the proper legal standards in assessing

the credibility of Plaintiff's complaints and adequately specified the reasons for discrediting Plaintiff's statements.

**IT IS THEREFORE ORDERED** this 3rd day of August, 2016, that the Commissioner's final decision denying Plaintiff's claim for benefits is AFFIRMED.

s/ J. Thomas Marten
J. THOMAS MARTEN, Judge